is 4160722. This is people be McIntosh and for the appellate Joshua Bernstein, Bernstein, Bernstein and for the athlete David Manchin, Mr. Bernstein, you may proceed. Good morning, your honors. May it please the court counsel. The reason we're here today is because the state, having been given two opportunities to show that they exercise due diligence to obtain timely DNA results, failed to do so. It is our position in this case that the important moment of proof, if you will, was at the time the state filed its six motions for continuances for DNA results, that they filed boilerplate motions that simply, actually literally alleged that they had exercised due diligence to obtain results. And at those hearings, they offered no facts that would back up the legal conclusions of those motions. In an extraordinary development, they were given a second opportunity at the evidentiary hearing in this case to somehow bring out more facts that would show due diligence. And it's our position that to the extent this court considers what happened at that third stage evidentiary hearing, post-conviction hearing, the facts actually show that the only time, the only moment at which the state exercised the kind of due diligence that was after the expiration of the speedy trial period, even if you account for the extra time that accrued as a result of Mr. McIntosh's acceding to the state's first motion for continuance. Let me ask you a question. Certainly. One of the things that's different about this case is it's post-conviction. I mean, I think it's different in terms of alleging ineffective assistance of counsel. Yes, Your Honor. If the state has not put on notice that due diligence needs to be bolstered, proved up, there's no specific objection, what's the state supposed to do when defendant? I won't say that it was total acquiescence, but it's more, okay, this takes time, everybody knows it's a pain because the labs are behind. In this case, we find out later that the labs switched its technology or some internal process makes it take longer. Doesn't that deprive the state of the opportunity? And I understand that you're going to say, well, yeah, but he should have made the specific objection. But if no objection is made, that deprives the state of the opportunity to say, well, yeah, I actually have been in regular phone conversations. I've done this, I've done this. I'm relying upon my experience to understand that this case isn't being buried. It's just that there's this process, and that's why the statute provides for this. It's a shame that it has to. It ought to be more prompt, but at any rate, long question, but isn't it the responsibility of somebody to raise this? Perhaps even the trial judge. Well, I think, Your Honor, the way I see this case, the lawyers in this case, and I'm including the trial judge as a lawyer, they were all operating as if, in a sense, this was an automatic continuance. Appellate Defender Schmidt, who was the attorney who represented Mr. McIntosh before the guilty plea. He basically got up and said, I object. And, you know, I believe that the statute is clear enough. When the statute says, as an exception to the Speedy Trial Act, you must show due diligence. There's something more that the lawyer for the state should have shown. You're correct. The judge should have caught this and asked for more. And in a sense, I agree that, yes, the public defender should have made specific objections. On the other hand, there's Mr. McIntosh, the only non-lawyer in this case, you know, like howling like Jeremiah, trying to get his speedy trial rights vindicated, filing a pro se motion for a discharge that the judge did never, you know, ruled on and wouldn't hear. Wasn't that on different issues, though? The speedy trial motion was not on different issues. He filed a motion to withdraw his guilty plea that was on different issues. But all along, Mr. McIntosh has maintained that he and he testified as much at the third stage evidentiary hearing that he felt his speedy trial rights had been violated and his lawyer wasn't doing what he wanted him to do. So long answer to a long question, Your Honor, the fact is here, I think the lawyers screwed up and I think the way this was treated was that it's an automatic continuance unless and this is speculation. Maybe after the day's hearings, they sat in the judge's chambers and discussed this, but nonetheless, the case will basically say it is automatic unless the state's representations that they have been acting with due diligence is challenged. Well, and that's part of our I mean, that's the problem with this case, Your Honor, they have to allege due diligence. They have to establish facts that show evidence of due diligence unless it's challenged. And that's what happened here. I disagree, Your Honor. I think an allegation that I am exercising due diligence is a legal conclusion. And unless there's a factual basis by which a judge can determine that due diligence was, in fact, exercised, I don't believe that's sufficient. And that's why I think going to your question, Your Honor, the judge here dropped the ball. If I stood, we've all been in court, we've all argued motions. The standard here is so low. Had she said, I talked to Aaron Small at the lab and he told me this case is on the ASAP list, which I believe is language this quote, this court quoted from another case in its Colson decision. But we're 133rd on the ASAP list. That's what the statute's for. This statute doesn't require the state to get the results. It requires them to try and to convince by factual allegations that they have tried. And respectively, I don't think picking up the phone and saying, are my not, I don't think that's sufficient. One more sentence would have sufficed. Listen, it's what she did after the expiration of the speedy trial period. I believe it was in May when she talked to the crime lab and said, look, this guy's, you know, he's he's asserting his speedy trial rights. Can we get the lead out on these tests? And they did. They turned the tests around in 35 days. But by that time, they'd already been through quite a bit of the process. You argued, I think, that if they had just said that earlier, then it would have come within the speedy trial time. That's not really true. The fact is that the other the first round of tests were also delivered after 163 days had elapsed. And I use 163 days because, like I said, Mr. Schmidt did not object to the the first motion for continuance. And that's chargeable to him. None of the none of the DNA results in this in this case came back before the expiration of the speedy trial period. And had they said at the December 10th motion, we've submitted these results. The state crime lab tells me there's X number of cases in front of us and they are not going to do it. They can't do it. They won't do it. Whatever she would have said. But I told them we need it fast. That's it. I wouldn't be here arguing this case today. But this is this is pro forma, start to finish on the part of the lawyers in this case. It also involved the fact that the public defender said he believed that they were exercising due diligence. That's why he wasn't saying. Well, what's interesting about that, Your Honor, to me is that, again, we have two experienced trial lawyers here. We have a state's attorney who is clearly in some position in her office that she's been entrusted to try DNA cases and a public defender. I think he said he'd been practicing 15 years or something like that. And and he gets up on the stand and he again, he offers the conclusion. There's no testimony from Schmidt that says this is why I believe she was exercising due diligence. What he said was, I believe she was exercising due diligence. And in fact, his intern, whose name I really like to know because I think the appellate defender could use her, filed a drafted a memorandum that almost mirrors our briefs. And we wrote our briefs without even knowing that this this memorandum had been written. She concluded out of his, he said, out of curiosity and because of this she came to the right conclusion. And that is his due, his fee trial right was violated by the pro forma way these motions were handled. And as I said, this is a minimal burden on an attorney. Is there a case law to support that position as you just phrased it? Well, Durham says that you have to have some sort of allegation that you've done something to expedite. And battles as well goes into far more detail. And I know this court rejected battles in Colson. But it's also our position that something like battles needs to come from this court to tell the lawyers that this is how you do it. That it's not just a matter of filing a motion with a legal conclusion. It's not just a matter of getting up and repeating your legal conclusion that you have to give the court the facts that will allow it to make a, you know, a reasoned decision as to whether due diligence was exercised. I understand you want us to limit ourselves to the facts at the time of the motions and not really at the PC hearing. But if we're at the PC stage, then how come the testimony of that forensic scientist, Pritchford, that but for the continuous contact by A.S.A. Weber, the case would have never made it in the speed in which it did. Why isn't that sufficient? Well, number one, it was A.S.A. Weber's duty to communicate that. So that's our position. But as far as Pritchford's testimony goes, what's really interesting to me about it is that in a general time frame of six to nine months, she considers delivering results in eight months to be expedited. And from my position, that absolutely rebuts any suggestion of due diligence, especially because they turned around those tests in 35 days after Weber spoke to Pritchford and said, let's. I don't I don't be more specific about how that rebuts it. Just that it took so long? It generally takes them six to nine months, right? But that was six to nine months as they used to do it. There was also testimony about present delay while we're processing the cases during this time period because our system has changed or our technology has changed or we're using a new some kind of new system. So the implication was it may even take again, implied, not stated specifically, it may take even longer, but because of the contacts, we expedited and we came in as fast as we used to. As I read Pritchford's testimony, there's nothing in there that says she communicated that fact to Weber. And the record is clear. By the way, if we're talking about the evidentiary hearing here, Weber's testimony is there's nowhere in there that she said Pritchford said there's a delay because of the because of this, whatever that changing testing. Yeah. So had that testimony been given at one of those hearings again, I wouldn't be here. But if you're looking at the evidentiary hearing, had Weber said, I talked to Pritchford 10 times and she told me the new testing is delaying us. The new testing is delaying us. I don't know. I don't know. But as I read this record, it shows that once Weber explicitly asked, the results came and they came very quickly. And I don't think 35 days is quickly, but I guess relatively, I guess relatively given what had occurred before, maybe it is. There you know, there's there's nothing in the record at the evidentiary hearing that suggests these tests could not have been delivered earlier. And I don't think anything Pritchford said to the extent that it's relevant. And I don't believe it's relevant because to the extent it's relevant, it doesn't help establish due diligence. But I don't believe it's relevant because the issue here is what happened at the hearings on the motions and what was alleged in the motions. And it's a low pleading standard and it's a very, very low standard of burden. It's a prima facie case based on allegations. You don't even need evidence. So that's our position, Your Honors. The the issue here is what happened at those hearings. It wasn't sufficient. And the remedy here is a finding of ineffective assistance, a finding that the denying the post-conviction petition and the necessary relief that flows from that is vacating Mr. McIntosh's conviction. Let me ask you a question. And I think you've made it clear you want us to limit. But even if we don't limit, you don't think the evidence is such that the state should prevail. But let's assume for the moment that we said to you from the bench, we need to consider all the evidence. If we were to say that, is there anything else that you want to say about the evidentiary hearing or the burden? Because isn't the burden different in the sense of this is post-conviction? I have to show, or one could phrase it this way, perhaps I need to show that there wasn't due diligence rather than them having to show that there was. I think to the extent you consider the evidentiary hearing, and you're correct, our position is that you should, all that it establishes is that there was not due diligence, that the due diligence that I should say it was not timely due diligence. The due diligence that occurred here on May 24th was, which is the time that Weber said she told the crime lab to speed up the testing. That's something like 200 and, around 206 days after Mr. McIntosh had been arrested. That's 40 something days after even the extended speedy trial period had elapsed. So that's, you know, the evidentiary hearing here provides some insight to this court that, in fact, there was no due diligence when these motions were filed. What, do we factor into it at all that the defense is, I didn't do it. It's not my DNA. It's going to come back negative. Apparently that was the strategy. Well, that's what we can discern from the record. That's what Mr., that's what Schmidt said Mr. McIntosh was telling him. Well, that, is that in dispute? No, no. But does that factor in at all? In terms of how, if I'm the defense attorney, how I'm weighing, I, I trust this state's attorney. She's probably doing whatever she's supposed to. I know what a pain it is for the crime lab. Besides, we're hoping it's going to come back negative. I'm asking, I'm not asking the weight. I'm just asking, is that part of the consideration? Looking at it as I do as a defense attorney, what I see is at, at the 163rd day, if I can win another way, the state had handed him a better defense that, you know, the speedy trial had been violated. Speedy trial act had been violated. So maybe, perhaps I'm looking at it through defense blinders, but I can't imagine that. Nah. Um, I, I just don't, I don't see how the, the consideration, were that the case, then don't object. If you're going to object to these motions, then file the motion for discharge. That, that's really our position. And unless your honors have any other questions, it looks like, um, my time is up. It actually, that's a warning when the red light goes off, but you'll have time on rebuttal regardless. I guess you will. Thank you for your argument. Mr. Manchin. Thank you, your honor. May it please the court, counsel. This is an unusual procedural, uh, stage for this case. What we have here is a claim of ineffective assistance of trial counsel for not raising a speedy trial issue that is raised in a post-conviction petition. There is an evidentiary hearing held by the trial court, held in the trial court, which expressly found, which expressly found that there was no diligence in suit, uh, seeking the DNA evidence on the part of the state and that there was no ineffective assistance of counsel, uh, in handling the speedy trial issue. Defendant has now presented an argument on appeal on today that we have to ignore everything that happened at the post-conviction petition and look solely to each individual request for the continuous. And if that particular continuous was wrong, everything else was fault. I think the defendant's position is, uh, incorrect. This court has to consider the evidence that was presented at the, uh, uh, post conviction hearing, given this, this, uh, the standard of the, uh, uh, the stage of these proceedings, uh, if you, why do we even have the court hold an evidentiary hearing if everything the trial court hears and considers is ignored, uh, uh, on appeal and the trial court's ruling was based, not only was it based upon what happened before, plus the evidence that was presented here and the trial court's decision on a, following a third stage dismissal, a PC petition is to be upheld unless the trial court's decision is contrary to the manifest way to the evidence. I submit that the weight of the, uh, that the, uh, it's guesstimated manifest way to the evidence if the other result is clearly shown by the evidence. In this case, the trial court's conclusion that there was no speedy trial violation, that there was no ineffective assistance of trial counsel is not contrary to the manifest way to the evidence. Under Foster and Gamble, which were cited in my brief, a, even perform a boilerplate language of a prosecutor saying I may have exercised diligence is sufficient to get a continuous for DNA unless the defendant disputes the diligence. There was, the defendant here did not dispute the diligence. Is that ineffective assistance of counsel for failure to ask for that kind of proof? Uh, as justice next said, the strategy here was, I'd like to get these results in. And I believe this, the prosecutors, uh, is trying to get this in, uh, some, uh, let's, let's let it go and hope for the best as far as the results. That's, I would suggest is a reasonable strategy. Uh, Well, if you're expecting good results, you'd want to get them in as quickly as possible, wouldn't you? Yeah. There's another wrinkle in this case, the statute regarding, uh, DNA continuances gives the, uh, state the authority for 120 days. In this case, the trial court only gave the, uh, prosecutor 30 days until the, or until the next, uh, next scheduled, uh, review hearing, which is why we had so many different requests for a continuous because 30 days is, uh, just simply not enough to try to get this kind of, uh, information in, in the normal sort of circumstances as the expert testified here, the only reason they got the results as fast as they did here was because of pressure from the, uh, uh, prosecutor. And based on that testimony alone, I submit that the trial court's determination at the post-conviction hearing is correct. That there was in the original appeal of this case, this court dismissed for lack of jurisdiction, didn't it? Uh, I honestly don't recall, uh, what the status was of the original appeal, this case. Okay. Well, I'll ask a defense counsel if he chooses to do anything with his rebuttal, but it seems to me, my recollection is this court dismissed for lack of jurisdiction. So the motion to withdraw was not filed that one of the arguments is because the motion to withdraw was not filed, there was no direct appeal of the, uh, speedy trial, which would have placed the case in a different posture on a direct appeal versus an appeal of a PC. That's kind of where I was going with that. But if you don't, I don't know if that's correct. Well, even accepting is true that it was dismissed, uh, at the, uh, on, on appeal for lack of jurisdiction. I don't think that should affect the analysis here. The defendants... But he's arguing he was denied a direct appeal on the speedy trial issue. Well, that, that is... Because he, he does not raise a issue here regarding the, uh, uh, what, what the, uh, claim here is that, uh, trial, uh, one of the, one of the allegations of the defense post eviction petition was that post trial counsel provided ineffective assistance of counsel by following a motion in arrest of judgment instead of a motion to withdraw the plea. Uh, I think that's what you may be referring to. I think though that, um... Okay. I, what I was getting at, did this court dismiss, and I guess you don't know the answer, the original appeal for lack of jurisdiction because the motion in arrest of judgment was filed instead of the proper motion. That's what I'm trying to get at. I would imagine that would have been the result. And if that's the case, isn't that significant? Because that's one of the arguments advanced by defendant here. Um, the, I, I addressed the issue of the, uh, uh, uh, not failure to, uh, oh, as far as that goes, there was testimony at the, uh, there's testimony at the post eviction hearing regarding this question of why did you file a motion in arrest of judgment rather than a motion to withdraw the plea? And my recollection is that he counts post, uh, post trial counsel said he talked about this with the defendant, told him the risks and rewards involved in filing a motion to withdraw the plea and then filed the motion in arrest of judgment based upon those, uh, conversations with the defendant at the defendant's requests. So that it was a joint decision made post trial by counsel and the defendants, not to file the motion to withdraw the plea, but to file, instead file the motion in arrest of judgment in order to preserve the sweetheart, uh, deal the defendant had gotten as far as the terms of the sentence that could be imposed and the charges so that what we, what the defendant is, uh, saying is that post trial counsel was ineffective for not filing a motion to withdraw the plea prior to sentence. Well, you couldn't file a motion to withdraw the plea prior to sentence. And the counsel said that as a matter of judgment, after discussing it with the raising the speedy trial issue, uh, rather than following the, uh, most of withdrawal of the plea and risking the 25 year cap. So I think that answers the question regarding, uh, how the difference between a motion to withdraw the plea and the motion of arrest of judgment and being deprived of the chance to raise the issue. It was a decision on the part of the defendants not to withdraw his guilty plea and to say that, uh, post trial, uh, or sentencing counsel was ineffective for following his, uh, uh, client's request. Do not with a move file, do not file the move, withdraw the plea that, uh, if you're following your, even if you're thinking your client is wrong, it's his  and when he tells you he does not want to withdraw the plea, there is no ineffective assistance in following that, uh, request. Does that answer your question? Well, sort of. Yeah, it answers my question. I'm not necessarily agreeing with, uh, everything that you have said. Yeah. Uh, something that I'm persuaded by, but that's, yeah, you've answered my question. All right. If there are no further questions, I submit the trial court's determination in this case regarding the question, the speedy trial and the, uh, uh, effectiveness of trial and post trial counsel regarding the speedy trial issue was proper. This is a case where the evidence as a whole, both from the, uh, each individual request and the testimony at the, uh, post trial hearing showed that, or post conviction hearing, showed that the prosecutor was in constant contact with the, uh, lab, was making constant requests for it and that the only reason the results came in when they did was because of that pressure. That is not a lack of diligence that would establish a speedy trial violation, uh, in the circumstances of this case. Okay. All right. Thank you very much. Amy Reboto. Uh, I'd like to first touch on this idea of the motion to, a motion and arrest of judgment as a substitute for a motion to withdraw the guilty plea. Our argument was not that counsel should, should have filed a motion to withdraw the guilty plea before sentencing, because that would have been ineffective assistance of counsel. That motion could not offer any relief. The motion and arrest of judgment cannot offer any relief either. What he did here was he squandered the appellate rights as you identified Justice Turner. The, the idea. Was I correct in suggesting that the reason this court dismissed the first appeal was because we said no jurisdiction because the proper motion was never filed within 30 days after sentencing? Yes, Your Honor. Uh, on direct appeal, appellate counsel filed a motion to withdraw because there was no jurisdiction in this court. And this idea that, um, he did it, uh, that, that Jackson filed this motion rather than withdrawing the guilty plea at the client's request, um, completely ignores the fact that he did it based on his misapprehension of the law. The, the motion and arrest of judgment, as Your Honors know, is a motion that's very limited in what it attacks. And even if you say, well, the judge considered it as if it were a motion to withdraw the guilty plea, there would have been no valid relief at that point as a motion to withdraw the guilty plea. But the trial court's already concluded that there was due diligence. Correct. The effect of a motion to withdraw plea would have been to allow him to withdraw his plea and go back to square one, right? I would be here arguing a very different case, Your Honor, because then I'd be saying that if you, if you withdraw the guilty plea on the basis argued in, as it was argued in the motion and arrest of judgment, you would have had to have found there was no due diligence and that there was a speedy trial violation. Well, you've asked us to take the facts as they were at the time of the hearing. Well, one of the facts is the judge has, the trial judge has already found that there was due diligence. So if we accept that fact and you've got post sentencing, a motion to withdraw plea, unlike your argument that, well, he would have just won his speed trial motion, no, he would have been set for trial where he could have then got natural life as opposed to his 25 year cap, right? That might be. Although I assure you... Isn't that a legitimate issue for the, for the subsequent counsel, Mr. Jackson to take into consideration and doesn't that lend credence to his claim that my client was telling me, I don't care what you do, but I do not want to withdraw my plea. Well, you know, I don't think that's really the only consideration here. Number one, filing a motion that offers no relief to satisfy your client is one thing, but failing to preserve the issues for appeal is entirely another. And that's the thrust of our argument. Whatever would have happened, he squandered the direct appeal here. What else would he have done? He could have filed the motion to withdraw the guilty plea. Maybe it would have been granted. Maybe it wouldn't have been. And we could have fought over the speedy trial issues with the record that happened in the trial court. That's essentially it. And very quickly, another issue, this idea of 120 days and that the judge went from 30 days to 30 days to 30 days. I don't have the site, but I know this court issued People v. Pettis not too long ago, in which you said, if a lawyer asks for a specific amount of time that governs, otherwise it's 120 days. And the lawyer in this case, Weber, asked for 30 days, 30 days, 30 days. So it's not, I'm sorry, Your Honor, please. Oh, no. One question I wanted to ask, does it make any, does it factor into it at all that he hired Jackson, that he wasn't an appointed counsel? So it was his choice of counsel. Does that make any difference at all? But, you know, I don't think so. Ineffective assistance is ineffective assistance. And this one I think is pretty glaring. Unless you, Your Honors, have any other questions, again, we ask you to reverse and make a decision. Okay. I don't see any other questions. Appreciate your argument. Mr. Manchin, the court trusts that you will pay special attention to the next time you have oral arguments before the court. Thank you both. In the case, the court sends recess.